IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Constitution Drive Partners, L.P.,      :
           Petitioner      :
     :   No. 643 C.D. 2019
     v.      :
     :   Argued: June 9, 2020
Department of Environmental      :
Protection,      :
           Respondent      :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


OPINION BY
JUDGE McCULLOUGH                 FILED: March 5, 2021


       Constitution Drive Partners, L.P. (Constitution Drive) petitions for review from the April 26, 2019 order and adjudication of the Environmental Hearing Board (Board), declaring that the 2007 and 2010 amendments (2007 Amendment and 2010 Amendment, respectively, the Amendments, collectively) to a 2005 prospective purchaser agreement (2005 PPA) between Constitution Drive and the Department of Environmental Protection (Department) were null and void. Specifically, the Board concluded that the Amendments were arbitrary and capricious pursuant to section 1113 of the Hazardous Sites Cleanup Act (HSCA),[2] 35 P.S. §6020.1113.[3]

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Act of October 18, 1988, P.L. 756, *as amended,* 35 P.S. §§6020.101-6020.1305.

**(Footnote continued on next page…)**

In part, section 1113 of the HSCA states that "[w]hen a settlement is proposed in any proceeding brought under this act, notice of the proposed settlement shall be sent to all known responsible persons and published in the *Pennsylvania Bulletin* and in a newspaper of general circulation in the area of the release." 35 P.S. §6020.1113.[4] Section 1113 of the HSCA also provides that a proposed settlement may be set aside as void if the Board finds that it is "arbitrary and capricious on the basis of the administrative record." *Id.* Here, the Department did not publish and open for comments the 2007 Amendment and 2010 Amendment until the spring and early summer of 2017, and the Amendments did not become final until the Department issued its response to the comments in January 2018. The predominant legal issue is whether the Board erred in determining that "[t]he Amendments were never properly noticed and made final in accordance with [s]ection 1113 of the HSCA and are,

---

[3] The Delaware Riverkeeper Network, and Maya van Rossum, the Delaware Riverkeeper (Riverkeeper), appealed the Amendments to the Board and are participating as intervenors in this appeal.

[4] In full, section 1113 of the HSCA, titled "Notice of proposed settlement," provides as follows:

> When a settlement is proposed in any proceeding brought under this act, notice of the proposed settlement shall be sent to all known responsible persons and published in the *Pennsylvania Bulletin* and in a newspaper of general circulation in the area of the release. The notice shall include the terms of the settlement and the manner of submitting written comments during a 60-day public comment period. The settlement shall become final upon the filing of the [D]epartment's response to the significant written comments. The notice, the written comments and the [D]epartment's response shall constitute the written record upon which the settlement will be reviewed. A person adversely affected by the settlement may file an appeal to the [B]oard. The settlement shall be upheld unless it is found to be arbitrary and capricious on the basis of the administrative record.

35 P.S. §6020.1113.

therefore, void because the Department's attempt to notice and finalize the Amendments in 2018 were inadequate, untimely[,] and failed to identify and account for the changed circumstances and conditions at the [s]ite." (Board's Conclusion of Law (C.O.L.) No. 6.)

Upon review, we conclude that the Department's significant delay—eight years, on average—in publishing notice of and finalizing the 2007 Amendment and the 2010 Amendment, in and of itself, does not render the Amendments arbitrary and capricious. Instead, the delay only served to postpone the date on which the Amendments became final for purposes of section 1113 of the HSCA. Nonetheless, we conclude that the changed circumstances that occurred at the site during this delay, and the fact that the Amendments failed to account for them, coupled with the resulting effect of depriving the public of the opportunity to provide meaningful comment on the Amendments, constituted a sufficient basis for the Board to declare the Amendments arbitrary and capricious and a legal nullity. Accordingly, we will affirm the Board.

## Background

The facts and procedural history of this case are summarized as follows:

[The Riverkeeper has] appealed the Amendments to the 2005 PPA entered into by [the Department] and [Constitution Drive]. The 2005 PPA was executed on March 17, 2005, in the form of a consent order and agreement [CO&A] and addressed an abandoned steel tube manufacturing facility located in East Whiteland Township, Chester County, known as the Bishop Tube HSCA Site ("Site"). The Site has a history of contamination with hazardous waste, primarily trichloroethene ("TCE"). Constitution Drive bought the contaminated property originally with the intent of redeveloping it for commercial purposes. Pursuant to the 2005 PPA, Constitution Drive agreed by March 1, 2009, to undertake an investigation and/or remediation of soils at the

3

Site necessary to demonstrate attainment with a nonresidential statewide health standard or site-specific standard . . . in accordance with a remedial action work plan that was attached and incorporated into the PPA. In exchange for Constitution Drive's work relating to the existing contamination at the site, the Department entered into a covenant not to sue Constitution Drive and agreed that Constitution Drive was afforded contribution protection pursuant to [the] HSCA . . . .

The 2005 PPA was amended twice, the first time on January 22, 2007, and the second time on June 4, 2010. The 2007 Amendment "amended and restated" Constitution Drive's remedial obligations established under the 2005 PPA. The 2007 Amendment mostly concerned the installation of an air sparging/soil vapor extraction system ("AS/SVE system"), which was intended to expedite the remediation of soils and groundwater at the Site. Among other things, Constitution Drive was required to operate the system for 60 days under certain specifications while removing an average of ten pounds of volatile organic compounds (VOCs) per day in order to complete its remedial obligations. After Constitution Drive had fulfilled these obligations, it would be released of its remedial obligations at the Site and the Department would then assume operation of the AS/SVE system. Unfortunately, the AS/SVE system never worked as planned and Constitution Drive could not get it to meet the agreed-upon performance standards.

The Department and Constitution Drive then entered into a second amendment to the 2005 PPA in June 2010 that again "amended and restated" Constitution Drive's remedial obligations. Under the 2010 Amendment, Constitution Drive was to repair the AS/SVE system and get it to operate continuously without incident for 72 hours (a significantly shorter time than the 30-day startup period and 60-day operational period called for under the 2007 Amendment). Constitution Drive was also required to pay the Department $30,000, repair a road, and install some security fencing. Constitution Drive completed its remedial obligations under the 2010 Amendment, and in December 2010, the Department released Constitution Drive from all further

4

remedial obligations established in the 2005 PPA and the Amendments.

A number of additional events involving Constitution Drive have taken place at the Site after the remedial tasks were completed and the Department's release letter was issued in December 2010. In June 2011, the Department discovered that a contractor for Constitution Drive had damaged the AS/SVE system and rendered it inoperable. In July 2011, the Department requested that Constitution Drive repair the AS/SVE system. Constitution Drive and the Department appear to have conducted discussions regarding the continuing necessity and viability of the AS/SVE system but, as of January 2014, the AS/SVE system had not been repaired. In a January 2014 letter, the Department declared the covenant not to sue to be void because of Constitution Drive's failure to repair the AS/SVE system. The covenant not to sue was important to Constitution Drive and its efforts to redevelop the Site and formed part of the consideration for the 2005 PPA and the Amendments. Constitution Drive appealed the January 2014 letter to the Board, but the Board ruled that the letter was not an appealable action by the Department. Also, in 2014, East Whiteland Township changed the zoning at the Site from industrial to residential at the request of Constitution Drive, which decided to pursue a residential development at the Site after being unsuccessful in redeveloping it for commercial purposes. Finally, in 2016/2017, the Department reviewed and commented on a new remediation workplan for the Site proposed by Constitution Drive that provided for targeted soil excavation that Constitution Drive claimed would reduce or eliminate the risk of exposure to the compounds of concern for the future occupants. In addition to these post-2010 actions involving Constitution Drive, there also were other remediation activities and [the] Department['s] actions at the Site that did not directly involve Constitution Drive based on documents included in the administrative record.

\*     \*     \*

Although the Amendments were drafted and signed in 2007 and 2010, due to what the Department[,] without any record support[,] terms an "inadvertent administrative oversight,"

5

the notice required under [s]ection 1113 was not published for either the 2007 Amendment or the 2010 Amendment until 2017, seven and ten years after the fact. A notice for both of the Amendments was published in the *Pennsylvania Bulletin* on April 1, 2017, and notice was published in *The Daily Local News* on March 18, April 1, April 29, and June 14, 2017. In response to the Department's notice, extensive comments were submitted, including by the Riverkeeper, East Whiteland Township, local residents, and potentially responsible parties [(PRPs)]. The Department issued its response to those comments on January 26, 2018. Accordingly, even though Constitution Drive and the Department [had already undertaken] performance pursuant to the 2007 and 2010 Amendments, the Amendments did not legally become final until the Department issued its comment response document in January 2018.

(Board's decision at 18-19) (internal citations omitted).

On February 21, 2018, the Riverkeeper filed an appeal with the Board challenging the Amendments. After conducting a conference and issuing orders pertaining to case management and discovery requests, the parties agreed upon the contents of the administrative record, and the Board accepted that record as the basis for its review.

At the conclusion of its review of the record and consideration of the arguments and written submissions of the parties, the Board issued its April 26, 2019 order and adjudication. In its adjudication, the Board first stated that it "ha[d] not previously addressed the issue presented in this case by the Riverkeeper's claim of untimely and inadequate notice of a HSCA settlement agreement." *Id.* at 23. Acknowledging that the Department "identified" *Chirico v. Department of Environmental Protection* (Pennsylvania Environmental Hearing Board, 2002 EHB 25, No. 2001-048-MG, filed January 28, 2002),[5] "as the only prior case in which the Board

---

[5] The Board's decision in *Chirico* is available at:

**(Footnote continued on next page…)**

has considered a challenge to a similar agreement," and the Department cited that case as controlling authority, the Board disagreed, finding that "[t]he facts in *Chirico* regarding the Department's actions in finalizing the agreement under [s]ection 1113 of [the] HSCA are completely different." (Board's decision at 23.) In distinguishing its decision in *Chirico*, the Board stated:

> In *Chirico*, the agreement was entered into on May 24, 2000, and notice of the agreement was published in the *Pennsylvania Bulletin* a month later on June 24, 2000. There is nothing in the Board's opinion in *Chirico* to suggest that the challengers raised inadequate wording in the public notice as an issue in the case. Further, there is no indication that any significant changes took place at the site in *Chirico* in the one month of time that elapsed between the execution of the agreement and the publication of the required notice in the *Pennsylvania Bulletin*.

(Board's decision at 23-24.)

The Board also considered other cases, namely those that "have involved challenges to permitting actions by the Department and have raised both untimely notice and inadequate notice issues." *Id.* at 24. However, the Board stated that it was "not convinced that these permitting cases are a good analog for [the] current case because of their different and distinct notice requirements when compared to those in [s]ection 1113." *Id.*

The Board continued:

> [T]he Riverkeeper's notice arguments have merit under the relevant HSCA statute and the unique facts present in this case. The notice and public comment process play a key role in HSCA settlements under the terms of [s]ection 1113 of [the] HSCA. The legislature expressly provided that a settlement agreement is not final until certain enumerated

http://ehb.courtapps.com/content/adjudications/Adjudications&Opinions-2002-Vol%201%20(pp.1-334).pdf (last visited February 23, 2021).

7

steps are completed including: (1) notice is sent to all responsible parties and published in the *Pennsylvania Bulletin* and a local newspaper; (2) a 60-day window for public comment is completed; and (3) the Department responds to the significant written comments. Consistent with the central role that the notice and comment procedures created by the legislature play in HSCA settlements, we conclude that the Department is required to provide a timely and meaningful notice and comment process in order to finalize HSCA settlements under [s]ection 1113. The steps taken by the Department in this case were woefully inadequate in satisfying this requirement.

(Board's decision at 24-25.)

After providing this commentary, the Board concluded:

[T]he Department's egregiously late public notice is a clear violation of the requirement that notice of a HSCA settlement be published when it is proposed. There is no reasonable reading of the [s]ection 1113 language that allows for publication seven and ten years later and the Department's excuse—that there was an "inadvertent administrative oversight"—finds no support in the administrative record and in any event is hardly a legitimate excuse. This is not a case where the required notice was a few weeks or even a few months late, a circumstance where any impact from the late notice might be negligible and/or readily mitigated by subsequent publication. The Department's action initially placed the public, and now places the Board, in a bizarre situation of evaluating the propriety of the Department finalizing the Amendments to the 2005 PPA years removed from the execution of those Amendments with Constitution Drive. The lapse in time presents obvious challenges for the public's ability to provide timely and meaningful comment on the Amendments.

(Board's decision at 25.)

In addition, the Board found that "[t]he problems created by the unacceptably late publication of the notice [were] compounded . . . by the shortcomings in the content of the notice and how it fail[ed] to address the changed circumstances at

8

the Site between 2010 and 2017." *Id.* at 25. The Board then engaged in a discussion of those circumstances, namely with respect to issues regarding the AS/SVE system and the fact that zoning of the Site had changed from industrial to residential in 2014:

> The Riverkeeper's comment says that the AS/SVE system "will not protect the public health, safety and welfare and the natural resources of this Commonwealth from the short-term and[ ]long-term effects of the release of hazardous substances and contaminants into the environment from the . . . [S]ite." The AS/SVE system, of course, was not part of the 2005 PPA and only became part of the remediation during the 2007 Amendment. The Department deals with this comment in its response by saying the actions taken pursuant to the 2005 PPA and the Amendments are just an interim response and a final response action is forthcoming . . . . However, this is a bit of a dodge that is not particularly helpful in evaluating whether the Amendments should have been finalized by the Department. The AS/SVE system was almost a complete failure and appears to have not materially advanced the cleanup of the [S]ite, yet the Department seems unwilling to acknowledge this reality . . . . The Amendments are premised on basic assumptions that have not existed for years.

> \*    \*    \*

> One commenter noted that "[n]owhere in the 2007 [Amendment] did the parties address whether these remediation measures were appropriate for property that would later be rezoned for residential use." . . . [T]he Department [did not] make any mention in the comment response document of the ongoing discussions between itself and Constitution Drive regarding the 2016/2017 Remediation Scope of Work for Targeted Soil Excavation that appears related to the zoning change and revised development plans. While zoning decisions themselves are largely outside of the Department's authority, that is not to say that zoning decisions do not influence the cleanup for the [S]ite. The 2007 Amendment makes clear that remediation must be consistent with the Site's intended use after redevelopment. . . . The Department could have changed the

> Amendments in light of its understanding of the proposed use of the property in 2018. The Department never explains why, based on its understanding of the zoning now, and the apparent ongoing efforts surrounding the 2016/2017 Remediation Scope of Work, these Amendments are still appropriate to finalize. The Department cannot . . . respond[] to the public comments it did receive as though nothing had changed at the Site or relative to the provisions of the Amendments since 2010.

*Id.* at 26-30. Ultimately, the Board found that, in light of the information that the Department provided in the notice in the *Pennsylvania Bulletin* and *The Daily Local News*, "the notice [would be] wholly unhelpful to anyone who was not paying close attention to the developments over the course of the last decade." *Id.* at 26.

Next, the Board determined that "[t]he Department's response to [the] comments [was] at times [] frustrating." *Id.* Notably, the Board found that "the Department repeatedly trie[d] to minimize the importance of the Amendments by assuring the commenters that further investigation and cleanup is needed and a final response action will come someday." *Id.* at 27. Based on the overall nature and substantive content of the Department's response, the Board believed that "[t]he Department [went] through the motions but [did] not earnestly address some of the comments, and its response almost treats it as a foregone conclusion that the Amendments would be finalized, without modification or further consideration." *Id.* at 28. Moreover, and in a similar vein, the Board determined that "[t]he Department's response to extensive comments about the change in zoning of the . . . [S]ite from industrial to residential [was] unsatisfying." *Id.* In this regard, the Board reviewed and discussed some of the Department's comments and stated: "There is very little support in the administrative record to show that the Department gave serious consideration to the change in zoning from industrial to residential." *Id.* at 29.

Accordingly, for these reasons, the Board sustained the appeal of the Riverkeeper. The Board concluded that "[t]he Department's action to finalize the Amendments in the face of the unique circumstances of this case [was] arbitrary and capricious" and declared that "the 2007 Amendment and the 2010 Amendment [were] void." *Id.* at 30.

**Discussion**

On appeal,[6] Constitution Drive contends that the Board erred in concluding that the Amendments were arbitrary and capricious. As an overarching theme, Constitution Drive asserts that "the Department complied with the requirements of [the] HSCA and presented a reasoned explanation for its decision to finalize the 2007 and 2010 Amendments." (Constitution Drive's Br. at 15.) Constitution Drive breaks down its thesis into three separate arguments.

In its first contention, Constitution Drive asserts that, "[a]lthough the Department failed to provide public notice of the 2007 and 2010 Amendments at the time that they were entered, the agency cured that failure when it published public notice in 2017 and opened the Amendments to public comment." (Constitution Drive's Br. at 15-16.) For support, Constitution Drive places heavy reliance on *Groce v. Department of Environmental Protection*, 921 A.2d 567 (Pa. Cmwlth. 2007). Constitution Drive further states that "it is [] important to note that no development occurred at the [] Site between the date the Amendments were entered and the date that

---

[6] "Our appellate review of the [Board's] adjudications is limited to determining whether the [Board] committed an error of law, [whether it] violated constitutional rights, or whether its material findings of fact are supported by substantial evidence. On issues of law, our standard of review is *de novo* and our scope of review is plenary." *Sunoco Partners Marketing and Terminals, L.P. v. Clean Air Council*, 219 A.3d 280, 286 n.17 (Pa. Cmwlth. 2019) (internal citation omitted).

11

the Department published notice of the Amendments." (Constitution Drive's Br. at 21.)

For its part, the Department argues that it acted within its authority and discretion when it entered into the Amendments and furthered the purpose of the HSCA. In particular, the Department contends that the intent of—and reasons underlying—the Amendments were to successfully remove source contamination from the subsurface of the Site, which directly furthered the HSCA's goal to "protect public health and safety and the environment." (Department's Br. at 15.) The Department thus maintains that the Amendments were not arbitrary or capricious because its decisions to enter into the Amendments were based on rational reasons.

Further, the Department argues that the Board's "holding fundamentally misapplie[d] the standard of review set forth in the language of [s]ection 1113 and overlook[ed] the fact that the obligations imposed on [Constitution Drive] by the two Amendments had already been fulfilled years earlier." (Department's Br. at 20.) In asserting that the Board misapplied the arbitrary and capricious standard, the Department posits: "Nowhere does the Riverkeeper contend that the Amendments *themselves* were arbitrary and capricious at the time they were entered." *Id.* (emphasis in original). Rather, the Department argues, "both the Riverkeeper and Board cloud the issue of whether the settlements . . . were reasonable and instead focus on the Department's procedural mistake in failing to publish notice at the time the Amendments were signed." *Id.*

Here, the Board based its decision on section 1113 of the HSCA and, as such, we begin with an examination of that statute. Titled "Notice of proposed settlement," section 1113 of the HSCA provides as follows:

> When a settlement is proposed in any proceeding brought
> under this act, notice of the proposed settlement shall be sent

to all known responsible persons and published in the *Pennsylvania Bulletin* and in a newspaper of general circulation in the area of the release. The notice shall include the terms of the settlement and the manner of submitting written comments during a 60-day public comment period. The settlement shall become final upon the filing of the [D]epartment's response to the significant written comments. The notice, the written comments and the [D]epartment's response shall constitute the written record upon which the settlement will be reviewed. A person adversely affected by the settlement may file an appeal to the [B]oard. The settlement shall be upheld unless it is found to be arbitrary and capricious on the basis of the administrative record.

35 P.S. §6020.1113.

It is a well-settled maxim that where the words of a statute are clear and free from ambiguity, the legislative intent is to be gleaned from those very words, and the plain language is not to be disregarded under the pretext of pursuing its spirit. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 664 A.2d 84, 87 (Pa. 1995); *Coretsky v. Board of Commissioners of Butler Township*, 555 A.2d 72, 74 (Pa. 1989). Viewing the plain language of the statute in a commonsense fashion, we agree with the Board that there are three requisites that need to be satisfied before a settlement agreement can be deemed final and/or valid: (1) notice must be sent to all responsible parties and published in the *Pennsylvania Bulletin* and a local newspaper; (2) a 60-day window for public comments must be provided; and (3) the Department must issue a response to the written comments.

Regarding the first requisite, *i.e.*, notice, the phrases in section 1113 of the HSCA, "[w]hen a settlement is proposed" and "notice of the proposed settlement," clearly envision that the terms and conditions of the settlement agreement have been memorialized in writing. In unambiguous words, the statute makes plain that the notice requirements are intended to provide the public with the opportunity to comment upon the settlement agreement at a point when the settlement agreement is merely a

13

"proposal" and not set in stone. The language of section 1113 also leaves no room for doubt that the terms and obligations of a settlement agreement do not take effect or become final until the comment period has passed, at which point the settlement agreement is subject to an appeal by an aggrieved party to the Board. While the Department argues that "the obligations imposed on [Constitution Drive] by the two Amendments had already been fulfilled years earlier," (Department's Br. at 20), this contention effectively bypasses the procedure for attaining finality in section 1113 of the HSCA and reduces the statute to a mass of superfluous words. Stated differently, the entire mechanism of section 1113 would be defeated if the duties and obligations of a settlement agreement could be completed before the settlement agreement goes through the notice, comment, and response phases and becomes final, valid, and effective for purposes of section 1113.

Moreover, even if the terms and conditions of the Amendments were "reasonable," as the Department asserts, this is beside the point because the reasonableness of a settlement agreement cannot serve as a substitute for the requirement that proper notice be made to the public. Indeed, notice to the public is designed to permit the public to contest and challenge whether the settlement agreement is in fact reasonable. Here, the 2005 PPA complied with the procedure in section 1113 of the HSCA; however, the 2007 Amendment and the 2010 Amendment altered the "work obligations" of Constitution Drive and thereby modified the 2005 PPA. (Board's Findings of Fact (F.F.) Nos. 22-39.) Notably, in exchange for Constitution Drive's assumption of remediation duties, "the Department in the 2005 PPA covenanted not to sue Constitution Drive for any claims relating to the historic contamination at the Site" and "provided . . . that Constitution Drive was entitled to

14

contribution protection pursuant to [s]ection 705 of [the] HSCA, 35 P.S. §6020.705." (Board's F.F. Nos. 33-34.)

Presumably, the Department believed that, due to evolving circumstances, the 2005 PPA had to be changed and that these changes were substantive and material—so much that the 2005 PPA needed to be formally amended through the Amendments. In its adjudication, the Board found that Paragraph 3 of the 2005 PPA imposed remediation duties on Constitution Drive; "[t]he 2007 Amendment 'amended and restated' Paragraph 3 of the 2005 PPA in several key respects"; and "[t]he 2010 Amendment [also] 'amended and restated' Paragraph 3 of the 2005 PPA in several key respects." (Board's F.F. Nos. 18, 26, 36.) Notably, Constitution Drive and the Department do not challenge these findings on the ground that they are not supported by substantial evidence, and it is well-settled that "[u]ndisputed findings of fact are binding on this Court." *West Perry School District v. Pennsylvania Labor Relations Board and West Perry Educational Support Personnel Association, PSEA/NEA*, 752 A.2d 461, 465 n.5 (Pa. Cmwlth. 2000).

Nonetheless, in an apparent attempt to downplay or minimize the effect of these findings, Constitution Drive argues that it is significant "that no development occurred at the [] Site between the date the Amendments were entered and the date that the Department published notice of the Amendments." (Constitution Drive's Br. at 21.) However, this argument overlooks or disregards the fact that remediation had occurred during this timeframe; the Amendments altered the duties of Constitution Drive with respect to remediation; and remediation (not development) was the primary subject matter of the 2005 PPA and the Amendments. Consequently, at the end of the day, the 2007 Amendment and 2010 Amendment resulted in a different settlement

15

agreement for purposes of section 1113 of the HSCA, and each Amendment required its own notice to the public and opportunity for comment.

By its very nature, the concept of "notice" and "comment" entail a "meaningful opportunity to be heard," and an opportunity to be heard can only be "meaningful" if the public is afforded "a fair opportunity" to challenge and make comments to the Amendments. *See Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 1043 C.D. 2015, filed February 6, 2020) (unreported), slip op. at 11.[7]  Here, the Department did not provide notice of either the 2007 Amendment or the 2010 Amendment to the public until it published notice in the *Pennsylvania Bulletin*, 47 Pa.B. 1902 (2017), on April 1, 2017.  This is extremely troubling for two primary reasons.

First, because both the 2007 Amendment and the 2010 Amendment were published at the same time, the public was necessarily divested of an opportunity to submit comments and lodge a timely challenge to the 2007 Amendment, in and of itself. If the public had had the opportunity to do so, it is possible that the Board would have determined that the 2007 Amendment was null and void, which could have fundamentally changed the course and posture of this case, *e.g.*, resulting in the 2010 Amendment being unnecessary or unfeasible, and, potentially, transforming the entire outcome of these proceedings.  The simple fact that the public lost this opportunity is what matters and, standing alone, the deprivation of that opportunity unquestionably flouts the commands of section 1113 of the HSCA.  After all, the statute unconditionally grants the public the legal rights to notice and comment.  It does not,

---

[7] We cite *Snyder Brothers, Inc.*, an unreported decision, for its persuasive value in accordance with section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

16

however, qualify the exercise of those rights based upon a percentage evaluation of the public's likelihood of success on the merits.

Second, despite the fact that the Amendments were conjoined for published notice in the *Pennsylvania Bulletin*, the Department and Constitution Drive entered into the 2007 Amendment on January 22, 2007, and the 2010 Amendment on June 4, 2010. (Board's F.F. Nos. 25, 34.) By the time the public received notice of the Amendments on April 1, 2017, and the Department issued its comment response and finalized the Amendments on January 26, 2018, Constitution Drive was already performing (or had completely performed) the modified and remodified obligations and duties contained in the Amendments. Stated differently, when the Department issued notice to the public on April 1, 2017, the public did not receive "notice of [a] proposed settlement," as required by section 1113 of the HSCA. Instead, the public obtained notice of settlement agreements that the Department and Constitution Drive previously put into motion and, for all practical intents and purposes, that were already considered to be valid, final, and binding.

Conceptually, the sole functional purpose of section 1113 of the HSCA is to allow the public to comment on a proposed settlement agreement and, based on the comments and the Department's response, to later mount a challenge before the Board, seeking to have the settlement agreement set aside. The entire principle and rationale embodied within and comprising section 1113 would be eviscerated if the public issued comments at a point when the parties to a settlement agreement have performed (or have taken prefatory measures to perform) the accompanying obligations and duties. An absurd result would also occur because, in the event the Board was to set aside an agreement in these circumstances, the parties would have assumed and undertaken duties and obligations that they never should have. And, since it is likely that what has

been done—in terms of remediation—cannot be undone, but even if it is determined that it can be undone, a legal dilemma will almost inevitably ensue between the parties to the settlement agreement with respect to issues such as fault, who is responsible for incurred expenses, and how and through what means corrective measures will be implemented.

In its adjudication, the Board briefly discussed, and adequately distinguished, its decision in *Chirico*, which in any event is not binding on this Court. *Pennsylvania Trout v. Department of Environmental Protection*, 863 A.2d 93, 107 (Pa. Cmwlth. 2004). But utilizing that case as a general guidepost, this Court notes that the Board correctly stated that, unlike the situation presented here, in *Chirico*, "the agreement was entered into on May 24, 2000"; the "notice of the agreement was published in the *Pennsylvania Bulletin* a month later on June 24, 2000"; and "there [was] no indication that any significant changes took place at the site . . . in the one month of time that elapsed between the execution of the agreement and the publication of the required notice in the *Pennsylvania Bulletin*." (Board's decision at 23-24.) While delay between a proposed settlement and published notice to the public, alone, is not enough to set aside a settlement agreement, we are nonetheless confident that, in the specific and unique context of this case, the delay of approximately eight years is more than troublesome. This is because, within the period that comprises the delay, there have been substantial changes not only at the Site itself, but also with respect to the obligations of the parties in the Amendments vis-à-vis the 2005 PPA, and, also, the 2007 Amendment vis-à-vis the 2010 Amendment. On this note, we conclude that changes in factual circumstances from the original 2005 PPA onward, combined with changes in the corresponding obligations of the parties throughout this matter, were a

18

sufficient foundation upon which the Board could determine that the Amendments were arbitrary and capricious.

Placing full reliance on *Groce*, Constitution Drive asserts that the Department cured its noncompliance with section 1113 of the HSCA when it eventually followed the statutory procedure in 2017 and 2018 and, thus, the Amendments are valid. However, *Groce* is a permitting case, and the Board dismissed such cases as unpersuasive, finding that they are not "a good analog for [the] current case because of their different and distinct notice requirements when compared to those in [s]ection 1113." (Board's decision at 24.) In any event, in *Groce*, "[a]fter the [Department] realized that its initial notice failed to include the degree of increment consumption for [the permittee], it promptly corrected this defect by sending out a supplemental notice which afforded the public and the [petitioner] an opportunity for effective public participation." 921 A.2d at 580. In *Groce*, the period of time that passed from the published notice to the amended notice was from December 17, 2005, to January 14, 2006 (approximately one month), and the defect that was cured was a numerical omission that was filled in with the appropriate number that designates the allowable increments for pollutants under the applicable statute. Here, by way of stark contrast, the 2007 Amendment was published 10 years later and the 2010 Amendment was published 7 years later; the changes reflected in the Amendments were substantive in nature and related to affirmative representations governing Constitution Drive's obligations at remediation; and, finally, as mentioned above, the public was deprived of the opportunity to lodge comments to the Amendments in a fair, effective, and fully-informed manner. Given the very character of these deficiencies, they are ones that cannot be "cured," and, therefore, we conclude that *Groce* is distinguishable on its facts.

Nevertheless, since the Amendments violated the express dictates of section 1113 of the HSCA, it is irrelevant whether the Department pursued a course of conduct in accordance with the general intent and spirit of the HSCA. Rather, the proper inquiry is whether the Board erred in determining that the Amendments were "arbitrary and capricious on the basis of the administrative record." 35 P.S. §6020.1113. Our precedent states as a general rule that something "is arbitrary and capricious where it is unsupportable on any rational basis because there is no evidence upon which [it] may be logically based." *Cary v. Bureau of Professional and Occupational Affairs, State Board of Medicine*, 153 A.3d 1205, 1210 (Pa. Cmwlth. 2017) (en banc) (internal citation omitted).

Here, the Department has not proffered any rational reason or articulated a supportable and logical basis explaining why the Amendments were effectively converted into finalized settlement agreements, and the parties undertook performance of their duties pursuant to those agreements, when section 1113 clearly mandates that a "proposed" settlement agreement must first undergo publication, comment, and response, before it can attain the formal status of being final and binding. *See* Black's Law Dictionary 238 (9th ed. 2009) (defining "capricious," in part, as being an order or decree that is "contrary to . . . established rules of law"); *cf. Ngou v. Schweiker*, 535 F. Supp. 1214, 1216-17 (D.D.C. 1982) (concluding that a federal agency's delay in publishing notice and public comment, along with the agency's decision to change benefits in the meantime, constituted arbitrary and capricious administrative action). Contrary to the Department's argument, it does not matter how broad its statutory authority and/or discretion is with respect to entering into settlement agreements, because section 1113 of the HSCA circumscribes that authority and/or discretion by mandating that the Amendments shall not be arbitrary and capricious. Succinctly put,

20

the essential requirements of section 1113 were not satisfied in this case, and, in essence, the Amendments were unilaterally implemented on their own accord, in obvious contravention of the statute. By any person's measure, there is no rationalization as to why the Amendments were publicized at a point when the terms of the Amendments no longer adequately accounted for the changed circumstances at the Site, and in the process, deprived the public of the opportunity to provide meaningful comment on the Amendments.

For the above-stated reason, and having concluded that Constitution Drive and/or the Department have failed to establish that the Board erred in declaring that the Amendments were void as arbitrary and capricious, we affirm the Board. Due to our disposition, we need not address the arguments of Constitution Drive and the Department pertaining to the content and sufficiency of the Department's publicized notice to the public or the adequacy of the Department's response to the public's comments.

Accordingly, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Constitution Drive Partners, L.P., :
                 Petitioner :
                                  :   No. 643 C.D. 2019
               v. :
                                  :
Department of Environmental :
Protection, :
                 Respondent :

## ***ORDER***

AND NOW, this 5th day of March, 2021, the April 26, 2019 order of the Environmental Hearing Board is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge